No. 2072.—NEW ORLEANS MUTUAL INSURANCE COMPANY *v.* J. H. RUDDOCK, Syndic, and CHALES R. RAILEY.

The syndic of ceded property, having regularly advertised and offered it for sale, and the purchaser, having failed to comply with his bid by paying the amount, may expose the same for sale a second time on the same day, without giving further notice by advertisement. C. P. 689.

Property offered at syndic sale a second time, on the same day, on account of the first purchaser failing to comply with the terms, is not so exposed at the risk of the purchaser at first offering, and the syndic can not recover of the purchaser at first offering the difference in amount which the property brings at second offering below that of the first. In such a case a third party purchasing the property at second offering can only be required to pay the amount bid, without reference to the amount bid at the first offering.

APPEAL from the Sixth Judicial District, Parish of St. Tammany. *Ellis,* J. *Alfred Hennen,* for plaintiff and appellant. *Gibson & Austin,* for defendant and appellee.

REPORTER.—The first opinion in this case being overruled on rehearing, is not published.

HOWELL, J. A rehearing having been granted on the merits of this case, the first question pressed on our attention is, what formality must be observed in making the second offering of ceded property, when the bidder, at the first offering, fails or refuses to comply with the terms of sale? In other words, can the syndic, in such case, immediately expose said property anew to sale and adjudicate it again, as authorized by article 689 C. P., or must he, at the end of ten days and after the customary notices, again expose it to sale, at the risk of the first purchaser, as prescribed by article 2589 C. C.?

Upon a more careful examination of the articles of the two Codes and the jurisprudence on this subject, we have come to the conclusion that article 689 C. P. must apply in such sales.

Article 2594 C. C., the first in chapter ten, which treats of *judicial sales,* declares sales which are made by authority of law to be of two kinds:

*First*—Those which take place when the property of a debtor has been seized by order of a court, to be sold for the purpose of paying the creditor.

*Second*—Those which are ordered in matters of succession or partition.

According to this classification or division, it seems that all judicial sales, that is, those made through the intervention of courts of justice, must fall within one or the other of these two kinds.

The next article (2595) declares that *judicial sales* are subject to the rules laid down in chapter nine for *public sales* in general, in all such things as are not contrary to the formalities expressly prescribed for such sales, and with the modifications contained in the articles following: *("en tout ce qui n'est pas contraire aux formalités, particulièrement prescrite pour ces sortes de ventes, et en outre sauf les modifications ci-après.")*

In chapter nine of the Code, embracing articles 2579 to 2593, and referred to in the above article, the sale by auction (or *public sale)* is defined to be that which takes place when the thing is offered publicly to be sold to whoever will give the highest price, and it is declared to be either voluntary or forced; voluntary when the owner himself offers his property for sale in this manner; forced, when the law prescribes this mode of sale for certain property, such as that of minors; it must be made through the ministry of a public officer appointed for the purpose; and whether voluntary or forced, is subjected to the rules prescribed or mentioned in said chapter. It is further declared therein that the sale by auction, as it is made by officers of justice, (as distinguished from a public officer, mentioned above) is treated of separately, under the title of judicial sales, in chapter ten, already referred to; and among the rules laid down in chapter nine, for public sales in general, is the one in article 2589, which says: *"In all cases* of sale by auction, if the person to whom the adjudication is made does not pay the price at the time required, agreeably to the two preceding articles, the seller, at the end of ten days, and after the customary notices, may again expose to public sale the thing sold, as if the first adjudication had never been made," and it will be at the risk of the first purchaser.

The question now arises, is there any formality prescribed for the sale of ceded property, different from or contrary to this rule, as contemplated by article 2595, quoted above?

Article 2180 provides that all sales of ceded property must be made on the same terms and under the same formalities that property seized on execution is sold; but this sale is made by the syndics, or some person appointed by them, at public auction. The act of 1826, p. 136, sec. 3 (re-enacted in 1855, p. 437, sec. 29), authorizes the creditors to change the terms and conditions, but not the formalities. The

formality for the sale of "property seized on execution," as to the particular now under consideration, is found in article 689, C. P.; and since the case of Lafon v. Smith, 3 L. 473, decided in 1831, it has been held that this article evidently contemplates an immediate exposure again to sale, if the purchaser at the first offering fails to comply with the terms; but not, however, at the risk of the said first purchaser. See 19 L. 308, and authorities there cited.

In the case of Stout v. Voorhies, 4 L. 392, the opinion was expressed that article 2589 C. C., is particularly applicable to voluntary sales, as also article 2588. The sale in proceedings under a voluntary surrender is not a voluntary sale. It is a judicial sale, ordered for the purpose of paying the creditors, as expressed in article 2594, and is governed, as to the formalities to be observed, by the Code of Practice regulating sales of property seized on execution, although conducted or controlled by the syndic.

The next question is as to plaintiff's right to retain the price bid and claim the sale to be completed by the adjudication which was made to their agent at the first offering. This we have, in our former opinion, answered adversely to their pretensions, and we adhere to that opinion. The agent should, at least, have paid the proportion of his bid due on the concurrent mortgage.

As to the reconventional demand of the syndic for the difference between the amount of the bid by plaintiff's agent and that for which the property was sold, we must say that it seems to be based on the theory that the second sale was one à la folle enchère, in which, however, the syndic and the said agent were mistaken; and if the contest were only between the plaintiffs and the syndic, their pleadings might force a different conclusion as to the adjudication to the said agent. The syndic, from the allegations and admissions of his answer, and his notice to the agent, intended the second sale to be made at the risk of the first purchaser, who was justified in declaring that such a sale, on the same day, was illegal, and his principals can not be held responsible to the syndic for any loss resulting from such a declaration. The conduct of the agent at the second offering can not be said to be factious or malicious, and the fact that he and the syndic were in error as to the formalities to be observed, can not change the real character of the sale, or affect the rights of the third purchaser at the second offering.

The judgment of the lower court against the plaintiffs on the syndic's reconventional demand for this sum, must be reversed.

It is therefore ordered that the decision heretofore rendered by us be set aside, and it is now ordered that so much of the judgment appealed from as condemns the plaintiffs to pay the syndic the sum of twelve hundred dollars be reversed, and that in other respects it be affirmed. Costs of appeal to be paid by the syndic.

Chief Justice Ludeling and Justice Wyly absent.